UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THOMAS D. NEEDHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:04 CV 393 |
| ) | |
| INNERPAC, INC., ) | |
| ) | |
| Defendant ) | |

**OPINION AND ORDER**

Before the Court is Plaintiff's "Motion to Strike and Notice of Objections to Proffered Trial Evidence," filed on March 23, 2007 wherein he objects to various witnesses and documentary evidence Defendant intends to produce at trial. Defendant responded on April 3, 2007 to which the Plaintiff replied on April 13, 2007. On May 2, 2007, the court held a telephonic hearing wherein the issues presented in the motion were discussed. At the conclusion of the hearing, the undersigned indicated that the following written order would issue confirming the rulings made at the telephonic hearing and resolving any remaining issues. For the following reasons, Plaintiff's Motion will be GRANTED in part and DENIED in part.

**Background**

Familiarity with the underlying facts and procedural status of this cause is presumed in this Order. However, before examining the issues presented by Plaintiff's motion, it is helpful to remind the parties that this case has been bifurcated into a two phase bench trial. Phase one, the liability phase, deals solely with the underlying contract terms, and as the court instructed counsel at the telephone hearing, is limited to the issue of whether the written contract, based upon the parties'

1

intent at the time of contract formation, provides for the payment of post-termination commissions. If the conclusion to phase one is favorable to Needham, the court shall proceed to phase two, damages, which requires Needham, via the procuring cause rule, to prove that he was the procuring cause of the orders placed by customers after his termination so as to recover commissions for those sales. In his present motion, Needham has set forth objections to proposed evidence by Innerpac relating to each phase. Accordingly, the court shall categorize these objections by reference to the phase of the litigation that appears to be affected by the objection/evidence.

**A.    Phase One Liability Issues**

   **I.    Testimony of Brian Travis**

In Defendant's trial brief, Innerpac indicated that Brian Travis ("Travis"), the Key Account Manager for Innerpac, would be a witness in this case. Needham objects to Travis being called as a witness because Innerpac has never previously disclosed him as a witness in the case and Needham has not had an opportunity to conduct discovery as to this witness.

Under Fed.R.Civ.P. 26, all parties are required to take part in extensive pretrial discovery. Early in discovery, " *without awaiting a discovery request,*" parties "must ... provide to other parties" the name and contact information of any person who might have discoverable information to support their claims or defenses and all documents or tangible things that the party may use to support its claims or defenses, along with other disclosures. Fed.R.Civ.P. 26(a)(1) (emphasis added). Closer to trial, Rule 26 also requires disclosure of the names and contact information of all witnesses and identification of all documents or exhibits that will be offered at trial. Fed.R.Civ.P. 26(a)(3)(A), (C).

Innerpac conceded in both its brief and during the telephonic hearing that it failed to disclose

Travis as a witness. Under Rule 37, a party that fails without substantial justification to disclose information required by Rule 26(a) or Rule 26(e)(1), or to amend a prior discovery response as required by Rule 26(e)(2), is not permitted to use that information as evidence at trial. Fed.R.Civ.P. 37(c)(1). The only exception to this rule is where the failure to disclose is harmless. *Id.* Indeed, the exclusion of undisclosed evidence "is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn, P. C.,* 388 F.3d 976, 983 (6th Cir.2004) *(quoting Musser v. Gentiva Health Servs.,* 356 F.3d 751, 758 (7th Cir.2004)).

Innerpac has offered no justification, substantial or otherwise, for its failure to identify this witness in a timely fashion. Nevertheless, Innerpac contends that Needham suffers no prejudice from its failure to disclose Travis because, to date, even when defendant witnesses have been disclosed, plaintiff has opted to depose no one in this case.

Innerpac's attempt to write off the error as harmless, however, misses the very point of the salutary nature of Fed.R.Civ.P. 26, "to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 60 (1st Cir.2001)). Indeed, it is not the defendant's place to pick and choose which witnesses it will disclose under the rules and, when called on the carpet for violating the rules, attempt to justify it by arguing that his opponent would not have put the knowledge to good use. This is simply not the standard of the Federal rules. In this case, the failure to disclose Travis or the substance of his intended testimony has impaired the plaintiff's ability to mount his offensive for trial. As noted above, Innerpac has offered no substantial justification for its failure to timely identify Travis, nor is the failure to do so harmless at this late stage of the proceedings. Accordingly, the Plaintiff's Motion

to Strike Travis as a witness in this case is GRANTED.

## II. Innerpac's Policy/Procedures Regarding Payment of Post-Termination Commissions

Next, Needham objects to any evidence seeking to establish that Innerpac has a company policy prohibiting payment of post-termination commissions. During discovery, Needham specifically sought the names of all sales personnel employed by Innerpac for the prior five years and whether any other sales employee had ever received renewal commissions for repeat business. According to Needham, the point of this discovery was to determine whether Innerpac did, in fact, pay other salespersons post-termination commissions and to verify whether a company policy may have existed. Innerpac objected to this discovery request claiming the evidence was irrelevant. Needham also sought company-wide information relating to the commission payments made to other sales employees of Innerpac for the prior 5 years. According to Needham, Innerpac provided only commission payments made to Needham and nothing more.

In its response, Innerpac agrees that it did not originally and has not through any supplement, provided "company-wide" sales information in response to Needham's discovery request because these records are irrelevant. It has, however, produced information regarding sales activity and commissions paid to other salespersons in Needham's former territory.

This response, however, does not address the primary concern raised by Needham in his motion, that is, that Innerpac plans to assert in the liability phase that it has a company-wide policy against the payment of post-termination commissions and thus, Marino, who negotiated the contract on Innerpac's behalf, would never have agreed to the payment of post-termination commissions. On this point, the Plaintiff's motion is GRANTED in part. Marino may testify that, during his tenure with Innerpac he has never negotiated a contract that provides for post-termination

4

commissions. He is precluded, however, from offering testimony that a "company-wide policy" prohibiting the payment of post-termination commissions exists / prevents him from negotiating such a provision. Given the state of discovery, Needham has no way to test the credibility of such a contention since Innerpac refused to provide the very discovery that would support/detract from that assertion. Indeed, if Innerpac planned to assert the existence of a company-wide policy prohibiting post-termination commissions payable to its salespersons, it should have disclosed the sales commission information sought by Needham which would, presumably, demonstrate that no salesperson has been paid post-termination commissions on accounts procured during his tenure with Innerpac. It did not, and thus, Innerpac is now prohibited from asserting such a policy existed and/or that Marino relied on it when negotiating the contract with Needham.

### III.   Industry Standards

In its trial brief, Innerpac asserts "[n]either Innerpac nor its competitors pay sales representative commissions for order [sic] placed after they leave employment." Needham moves to strike any evidence presented at trial relating to industry custom because case law provides that industry standards are irrelevant and Innerpac has never identified any expert witness to testify as to what industry standards are. Needham cites to *Sample v. Kinser Insurance*, 700 N.E.2d 802, 804 (Ind.App. 1998) for the proposition that in a contract dispute like the present one, industry standards are irrelevant presumably because the key question in such cases is whether the parties agreed in the particular contract that some other compensation scheme applied.

In *Sample,* the Indiana Court of Appeals examined a breach of contract action filed by Sample, an insurance agent seeking payment from Kinser Insurance for commissions following her termination. The court noted that while the contract unambiguously provides for commissions based

5

on new and renewal business while Sample was employed, the key issue (as it is in the present case) was whether the contract made provision for commissions following Sample's termination. In an effort to demonstrate that the contract did not provide for post-termination commissions, Kinser Insurance, relying on the affidavit of James Kinser, argued that the standard in the insurance industry is that commissions are not paid after a person leaves the employ of an insurance agency. The court of appeals rejected this argument holding:

> Industry standards may be relevant for some purposes but they are not relevant in this case. Although an employer and employee are free to agree that commissions will not be paid after the employee's termination, the general rule is that a person employed on a commission basis is entitled to those commissions when the order is accepted by the employer. *Robinson v. Century Personnel, Inc.,* 678 N.E.2d 1268, 1270 (Ind.Ct.App.1997), *trans. denied.* Stated differently a person employed on a commission basis is entitled to commissions on business she has secured even though payment is not received by the employer until a later date. *Vector Engineering & Mfg. Corp. v. Pequet,* 431 N.E.2d 503 (Ind.Ct.App.1982). 'This general rule may be altered by a written agreement which clearly demonstrates a different compensation scheme.' *Robinson,* 678 N.E.2d at 1270. In this case the written compensation agreement is silent as to whether Sample is entitled to commissions subsequent to her termination as an employee. Contrary to Kinser Insurance's argument this does not mean that Sample is not entitled to commissions. Rather, the general rule applies.

*Sample*, 700 N.E.2d at 804.

During the telephonic hearing, Innerpac clarified its position by indicating that it did not intend to introduce any evidence of its competitors' practices or present an expert to testify regarding standard practices in the industry. Instead, Innerpac intends to call Marino to testify that his intent in entering the employment contract with Needham, formulated through his experience in the industry and his knowledge of industry standards, was not to pay post-termination commissions. Even with this clarification, however, it appears that Innerpac is attempting to introduce through the back door what it cannot get in through the front, that is that Innerpac did not

6

intend to pay post-termination commissions consistent with industry practice. This sort of testimony is clearly foreclosed by *Sample* which finds industry standards irrelevant to an individual contract dispute such as this one. What is relevant is whether during the negotiations of this particular contract, the parties intent, as evidenced through the contract itself and the extrinsic evidence of communications which ultimately led to the signing of the contract, demonstrate an intent to pay post-termination commissions. Accordingly, the Plaintiff's Motion to Strike evidence regarding industry practices and/or standards is GRANTED.

**(B) Phase Two Damage Issues**

The remaining objection by Needham to Innerpac's trial evidence relates to phase two, presuming, of course, that the damages phase of the litigation is reached.

### I. Efforts of Other Innerpac Employees to Solicit, Maintain, or Generate Sales of the Customer Accounts at Issue and Commissions Paid to these Employees for Sales within Plaintiff's Former Territory

In its trial brief (and in the pretrial order) Innerpac argues that other Innerpac employees serviced or maintained Needham's accounts after his termination and thus, they, not Needham, were entitled to commissions on those sales and were, in fact, paid commissions. During discovery, Innerpac was asked to identify all persons, other than plaintiff, who solicited, procured, generated or maintained each account. Innerpac responded that the information was irrelevant and did not provide it. Likewise, Innerpac objected to Needham's request for a record of commissions paid to other employees during the time frame of August 28, 2000 to the date of the request. Innerpac responded that the information was confidential, the request was overly broad and unduly burdensome, and the information sought was irrelevant. Now, Needham urges that Innerpac is improperly trying to present this evidence which they previously withheld from him during

7

discovery.

In its response, Innerpac contends that at the time it served Needham with its interrogatory answers, it believed that the efforts of others to procure the sales at issue was irrelevant because it was, and still is, the Defendant's position that the Employment Agreement, the focal point of this case, does not entitled Needham to commissions on orders placed after his termination. At summary judgment, Defendant offered the alternative argument that even if the Employment Agreement did entitle Needham to commissions, he is only entitled to commissions for sales that he procured. Finally, Defendant notes that in response to Needham's recent motion to compel certain discovery, it produced commission reports for other sales representatives.

The argument that Needham did not procure the sales for which he seeks credit, is not a new one. Innerpac did, in fact, raise the issue at the summary judgment stage although the argument was unsupported by any evidence on the issue. This Court's summary judgment order discussed the limited evidence presented by Innerpac on this precise issue, explaining:

> Moreover, even if Needham prevails at trial on the issue of whether the contract covers future commissions (i.e., a jury concludes that the contract does not exclude him from receiving post-termination commissions), he must still ultimately overcome the hurdle of proving that he was the procuring cause of the future orders (i.e., but for his efforts while he was employed, the orders would not have been placed)...
> 
> On the whole, Needham broadly argues that he was the procuring cause of post-termination orders because he secured and serviced at least 51 accounts while employed by Innerpac and that his primary goal was to target a customer demographic which would provide continuing streams of orders and reorders over a number of years....
> 
> Innerpac is equally broad in its assertion that Needham did not procure any of the post-termination sales for which he now seeks commissions, including JIT's orders, relying simply on saying that another salesperson was in place at the time the orders were placed and that considerable effort by others occurred before JIT placed its orders with Innerpac. There is nothing in the record from Innerpac

8

>       demonstrating what, in fact, the new salesperson did or did not do with respect to sales orders placed by Needham's former customers so as to show that Needham's replacement procured the orders rather than Needham.
>
>       Neither party's submissions identify the number of orders at issue, from which customers they originate, the date the orders were placed, or what actions Needham took prior to his termination to secure the orders from the customers. At best, the court has only Needham's blanket assertion that he had developed a longstanding relationship with his customer base and thus, his efforts led to the continued business given to Innerpac. Likewise, the court has only Innerpac's blanket assertion that this longstanding relationship did not give rise to the additional orders it received from Needham's former customers.

Order at pp. 17-18.

Needham acknowledges that the assertion that he did not procure the sales for which he seeks commissions has been previously argued by Innerpac. He objects, however, to what he views as Innerpac's attempt to call as witnesses other Innerpac sales representatives, never previously disclosed, to testify as to their efforts in Needham's former sales territory.

During the telephone hearing on this issue, Innerpac indicated that it had no intention of presenting testimony from individual sales representatives who have serviced Needham's former sales territory since Needham's termination. Rather, Innerpac intends to present testimony from two individuals, Jeff Norris ("Norris") and Eugene Marino ("Marino"), Innerpac's CEO, both of whom have been previously disclosed to Needham as witnesses. The substance of their testimony, as disclosed by counsel, is to outline the steps that the two of them undertook after Needham's employment with Innerpac ended to procure sales to JIT Packaging, one of the main accounts Needham alleges he procured prior to his termination. In addition, Marino is expected to generally testify that upon Needham's termination, other sales representatives were immediately transferred into his territory and serviced it, the inference being that these representative procured the sales

9

after Needham left Innerpac's employ. Moreover, Defendant represents, and plaintiff did not argue to the contrary, that it has produced commission reports for the other sales representatives who earned commissions in plaintiff's former territory after he left the defendant's employ and thus, the commission amounts have been disclosed so as to permit an appropriate calculation of damages if Needham prevails.

In light of the concession from Innerpac that it does not intend to call any witness other than the witnesses it has previously disclosed and the fact that Innerpac has provided commission reports to Needham outlining the sales commissions paid to the representatives transferred into his former territory, Needham's Motion to strike this evidence is DENIED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion to Strike is GRANTED in part and DENIED in part.

SO ORDERED.

This 6th day of June, 2007

s/ William C. Lee
United States District Court
