UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THOMAS D. NEEDHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:04 CV 393 |
| ) | |
| INNERPAC, INC., ) | |
| ) | |
| Defendant ) | |

**OPINION AND ORDER**

Before the Court is Plaintiff Thomas Needham's ("Needham's") Motion for Attorneys' Fees [DE 167] and Amended Motion for Attorneys' Fees [DE 174] filed on August 29, 2008 and September 25, 2008. Defendant responded on September 29, 2008 to which Needham replied on October 2, 2008. For the following reasons, the Plaintiff's Motions will be GRANTED.

**Discussion**

After a bench trial in this diversity action wherein Needham asserted state law claims for unpaid wages, commissions, and bonuses under the Illinois Sales Representatives Act ("ISRA"), as well as breach of contract, the Court found in favor of Needham and awarded $12,098.21 in post-termination commissions. [DE's 130 and 164]. Needham subsequently filed the present motions seeking an award of attorneys' fees and costs.

The litigation in this case began in 2003 and, after a lengthy motions process involving cross-motions for summary judgment, supplemental briefing on choice of law issues and various motions to strike, two separate bench trials commenced. Throughout the litigation, Innerpac presented a

1

tenacious defense and vigorously argued the merits of Needham's claims.[1] Ultimately, however, as noted above, the court concluded in Needham's favor in the liability phase of the first bench trial and then proceeded to find in Needham's favor on certain portions of the damages claim in the second bench trial. Although Needham sought upwards of $100,000 in damages and presented credible evidence to support such a calculation, the court concluded that the Plaintiff's evidence on the main portion of the damages claim failed to prove that claim by a preponderance of the evidence. Thus, the total awarded to Needham was $12,098.21 along with "reasonable attorneys fees and court costs." 820 ILCS 120/3. Presently, Needham seeks fees and costs in an amount of $207,329.35[2] for his two attorneys. Defendants object to this amount, contending that the amount, on the whole, is unreasonable. The court turns now to this argument.

## I. Determination of a Reasonable Fee

The fee applicant bears the burden of establishing and documenting the appropriate hours expended and hourly rates. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The district court has "wide latitude" in setting awards of attorney's fees. *Divane v. Krull Elec. Co.,* 319 F.3d 307, 314 (7th Cir.2003). Where litigants cannot settle the amount of a fee, "the most useful starting point for [court determination of] the amount of a reasonable fee [payable by the loser] is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," the so-called "lodestar" determination. *Gisbrecht v. Barnhart,* 535 U.S. 789, 802, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002) (quoting *Hensley,* 461 U.S. at 433.) The court "may then

---

[1]In fact, Innerpac continues to vigorously defend this action as it has chosen to appeal the judgment in this case and that appeal is currently pending in front of the Seventh Circuit Court of Appeals.

[2]This amount reflects 10% less than the actual fees expended by the plaintiff because plaintiff concedes that the total fee award should be reduced by 10% to reflect his limited success.

increase or reduce the modified lodestar amount by considering a number of factors, the most important of which is the 'degree of success obtained.' " *Spegon,* 175 F.3d at 550, *quoting Hensley,* 461 U.S. at 436 (citations omitted).

Plaintiff has submitted affidavits and billing records from his attorneys documenting hours worked and setting forth the hourly billing rate for each individual[3] working on the case. Defendants make a general objection to the entirety of the petition, claiming that the hours billed are unreasonable in light of the degree of success. They do not, however, set forth any detailed exposition of which hours they believe are excessive nor do they make any objection to the hourly rates charged by counsel or their paralegals.

### A. <u>**Hours Reasonably Expended**</u>

"The significant inquiry here is whether or not this Court determines that the expenses are reasonable, *Hensley*, 461 U.S. 424, 103 S.Ct. 193, and whether the documentation was adequate. *Webb v. James*, 967 F.Supp. 320 (N.D. Ill. 1997), *aff'd*, 147 F.3d 617 (7th Cir. 1998), *reh'g denied.*" *Moore*, 22 F.Supp.2d at 912. The burden to make this showing is naturally on the party seeking the fee award, and the claimed hours will be reduced or disallowed altogether if they were unreasonably expended, or if the Court is unable to determine whether they were reasonably expended. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir. 1986) ("The billing records must be sufficiently clear to enable the district court to identify what hours, if any, are excludable because they are excessive, redundant, or otherwise unnecessary.") (citing *Blum*, 465 U.S. at 895 n.11, 104 U.S. at 1547 n.11). In particular, entries that fail to define a precise purpose, such as a cryptic reference to "telephone call to X" or "strategy conference," or time records that

---

[3]Plaintiff seeks fees for both attorneys and paralegals.

3

lump together multiple tasks in a single block of billed time, are impermissibly vague and inadequate because it is impossible to evaluate them to determine whether "appropriate billing judgment" was exercised. *See*, *e.g.*, *In re Olson*, 884 F.2d 1415, 1428-29 & n.22 (D.C. Cir. 1989); *Webb*, 967 F.Supp. at 324; *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F.Supp. 1017, 1021 (N.D. Ohio 1997); *W.C. v. DeBruyn*, 883 F.Supp. 354, 355 (S.D. Ind. 1995); *Vitug v. Multistate Tax Comm'n*, 883 F.Supp. 215, 224 (N.D. Ill. 1995); *Claus by Claus v. Goshert*, 657 F.Supp. 237, 244 (N.D. Ind. 1987); *Bovey v. City of Lafayette*, 638 F.Supp. 640, 646-47 (N.D. Ind. 1986).

Given this analytical framework, Innerpac makes a general objection to the hours expended contending that Plaintiffs' counsel hours are unreasonable and claims that the most plaintiff should receive in fees and costs is $50,000. Innerpac also makes a more pointed objection arguing that there should be a significant reduction in the amount of fees recoverable since the plaintiff's total damages were small considering the original demand in this case.

As to the general objections to the hours expended, it is worth noting that those opposing fee applications have obligations, too. "In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir.1988). Here, however, Innerpac fails to designate which hours in the Plaintiffs' submissions are excessive and which hours should be excluded.

Despite the absence of detailed objections, the court is mindful that the Plaintiffs and their counsel were required to exercise "billing judgment" in making their attorney fee claim. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999) (citing *Hensley*, 461 U.S. at 434, 103

S. Ct. 1933 (explaining that a fee applicant is expected to exercise "billing judgment" in deciding which hours are "properly billed to one's adversary pursuant to statutory authority"). This they have appeared to do in all but a few circumstances.

Having thoroughly reviewed the billing records submitted by Plaintiffs' counsel the court concludes that the majority of the time appears well-spent on activities necessary to the litigation. In fact, the exercise of billing judgment in this case is commendable. However, there are some entries, detailed below, that the court concludes are excessive and thus, will exclude from the fee award:

**Excluded Hours from Attorney Harmeyer's Fee Petition**

| TASK | HOURS BILLED | AMOUNT EXCLUDED |
|---|---|---|
| 9/03/03 - Leave message | .10 | $21.00 |
| 10/27/03 - Leave message | .10 | $21.00 |
| 11/25/03 - Leave message | .10 | $21.00 |
| 2/26/04 - Leave message | .10 | $21.00 |
| 5/28/04 - Leave message | .10 | $21.00 |
| 7/30/04 - Leave message | .10 | $21.00 |
| 10/21/04 - Organize pleadings | .50 | $105.00 |
| 12/31/04 - Receive Message | .20 | $42.00 |
| 5/27/05 - Receive Message | .10 | $22.50 |
| 6/30/05 - Receive and return message | .10 | $22.50 |
| 9/7/05 - schedule mediation | .10 | $22.50 |
| 9/20/05 - receive and return message | .10 | $22.50 |
| 11/04/05 - organize mediation exhibits/enlargements | .30 | $67.50 |
| 12/12/05 - organize exhibits | 1.00 | $225.00 |
| 5/11/06 - receive message | .10 | $22.50 |
| 3/1/07 - leave message | .10 | $23.00 |
| 3/08/07 - organization of trial exhibits | 1.00 | $230.00 |
| 3/09/07 - trial organization | 2.00 | $460.00 |
| 4/13/07 - leave message | .10 | $23.00 |
| 4/27/07 - leave message | .10 | $23.00 |
| 8/18/07 - trial organization | .50 | $115.00 |
| 9/10/07 - trial organization | .50 | $115.00 |
| 9/11/07 - trial organization | 1.00 | $230.00 |

| 12/11/07 - leave message | .10 | $23.00 |
| --- | --- | --- |
| 2/09/08 - document organizing and indexing | 1.20 | $288.00 |
| 5/06/08 - trial organization | 1.00 | $240.00 |
| **TOTAL** | 10.7 | $2,448.00 |

**B.  Reasonable Hourly Rate**

After determining the number of hours "reasonably expended," the Court must now determine a "reasonable hourly rate." *Spegon v. The Catholic Bishop of Chicago,* 175 F.3d 544, 554-55 (7th Cir.1999) (citing *Hensley,* 461 U.S. at 433). The determination of an attorney's "reasonable hourly rate" should be based on the "market rate" for the services rendered. *Id.* (citing *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,* 90 F.3d 1307, 1310 (7th Cir.1996)). "An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* at 555 (internal citations omitted). The burden of proving the market rate is on the fee applicant; however, once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded. *Id.* at 554-55.

In this case, Plaintiff asserts the following hourly rates for the different attorneys that have provided services on his behalf: Michael Harmeyer, $240.00/hour; Christopher Myers, $250.00 and $300.00/hour.  In addition, Plaintiff has utilized paralegal services billed at a rate of $75/hour. Along with the proposed hourly rates above, the Plaintiff has submitted an affidavit from each of their attorneys indicating that attorneys level of experience and areas of expertise.   In further support of the rates for counsel Plaintiff  submits the affidavit of Patrick Proctor, Esq., a local Fort Wayne, Indiana attorney with the firm of Eilbacher Fletcher, LLP who avers that the proposed rates above are within the well-established market rates for the Fort Wayne, Indiana community.

Innerpac has not challenged these proposed rates as the prevailing market rates in the Fort Wayne area. Moreover, this court's review of the cases cited by Attorney Proctor in his affidavit, demonstrates that the hourly rates sought by Plaintiff's attorneys do, in fact, fall within the reasonable hourly rates for attorneys of their skill and expertise in this community. *See* Affidavit of Patrick Proctor, ¶9 (listing attorney fee decisions in this district and the hourly rates determined to be reasonable in those cases). Accordingly, the court concludes that the proposed hourly rates are appropriate and reasonable market rates for the services rendered.

### C. Calculation of the Lodestar

| ATTORNEY | HRLY RATE | AMOUNT BILLED | HOURS EXCLUDED | EXCLUDED AMOUNT | TOTAL |
|---|---|---|---|---|---|
| Michael Harmeyer | $210 - $240.00 | $148,274.00 | 10.2 | $2,448.00 | $145,826.00 |
| Christopher Myers (including paralegal services) | $250 - $300.00 (atty rate); $75 paralegal rate | $79,766.09 | $0 | $0 | $79,766.09 |
| TOTALS | | | | | $225,592.09 |

## II. Adjustments to the Lodestar

Having concluded then, that the amount of fees sought at first glance appears reasonable, Innerpac argues that two adjustments must be made to the lodestar calculation. First, it contends that Needham prolonged the litigation by rejecting settlement offers made to him at four different court-ordered settlement conferences and that since the recovery achieved by Needham was less than these offers, it necessitates a downward adjustment to the lodestar amount. Second, Innerpac contends that the lodestar should be reduced by some percentage to reflect the fact that Needham's claims for conversion, actual fraud, constructive fraud and a portion of his breach of contract claim

7

relating to bonuses were all dismissed at summary judgment.

With respect to the former argument, Innerpac contends that at the various settlement conferences, it offered between $25,000 and $50,000 in settlement which is the equivalent to between two and four times the amount this Court ultimately awarded Needham after trial. Innerpac further cites to *Connolly v. National School Bus Service*, 177 F.3d 593 (7th Cir. 1999) for the proposition that a refusal by a party to accept increasing settlement offers only to ultimately receive a judgment in a lesser amount may justify a reduction to the lodestar. A review of that case, however, demonstrates that its facts are distinguishable from the facts here. In *Connolly*, a Title VII action, the plaintiff rejected increasing settlement offers of $12,500, $20,000, and $25,000 only to accept, on the eve of trial, an offer of $10,000 which then allowed plaintiff's attorneys to litigate the size of the attorney fee award. In ruling on the attorneys' request for fees, the court reduced the lodestar amount by a third contending that the plaintiff's litigation tactics had unreasonably delayed resolution of the claim. *Connolly*, 177 F.3d at 598. The court, for instance, cited the fact that plaintiff's counsel "refused the district court's order to conduct settlement negotiations with [the plaintiff] present because she might wish to accept an offer of settlement in her interests, but which did not meet those of [her attorneys]." The court was further convinced of this when plaintiff's attorney explained to the court that the refusal to settle earlier was because "this case is all about fees." *Id.* On appeal, the Seventh Circuit concluded that the district judge had ample evidence that counsel delayed settlement in the case.

This case, however, is quite distinguishable from the facts of *Connolly*. Unlike in *Connolly*, this case proceeded to trial wherein the plaintiff ultimately sought damages in good faith of nearly $100,000. There is absolutely no evidence that the plaintiff delayed unreasonably the resolution of

the case by rejecting settlement offers that were half the amount the plaintiff sought in good faith and which did not include (at least it has not been represented to the court that the offer included) a provision for attorneys fees. Although the plaintiff did not prevail on the total value of his claim, he did present credible evidence on the items of damage he sought. Further, there is no evidence that the plaintiff's attorneys in this case delayed the matter of settlement in any way. Moreover, Innerpac could have made a strategic choice to make an offer under Fed.R.Civ.P. 68 which could have limited its attorney fee exposure. Instead, Innerpac took its chances and vigorously defended the lawsuit. Simply stated, "the defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986). And, in this case Innerpac took this risk. Accordingly, the fact that Needham rejected settlement offers only to recover less at trial does not warrant, in this instance, any reduction to the lodestar.

The same cannot be said, however, for a lodestar reduction based upon unsuccessful claims and the limited success of the remaining claim. Indeed, even plaintiff acknowledges that some percentage reduction is reasonable given the fact that all but one of his claims was dismissed at the summary judgment stage. The plaintiff, however, suggests a reduction of 10% is appropriate. Innerpac, however, argues for a much greater reduction.

Certainly, "the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee." *Texas State Teachers Ass'n v. Garland Ind. Sch. Dist.,* 489 U.S. 782, 790 (1989).[4] "If a plaintiff has achieved only partial

---

[4] One measure of the reasonableness of the plaintiff's fee request is a comparison between the plaintiff's request and the fees expended in defense of the lawsuit. Certainly, the time spent by defense attorneys is not a perfect measure of the time spent by plaintiff's lawyers. But, as the court stated in *Ruiz v. Estelle,* 553 F.Supp. 567, 584 (S.D.Tex.1982), it is not without value:

success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Farrar v. Hobby,* 506 U.S.103, 114 (1992).

As Innerpac points out, plaintiff's counsel has not set forth a detailed exposition of the time spent on the unsuccessful claims in this litigation and for this reason, it is impossible for the court to determine the time spent on these claims. And, at least some of those claims, i.e., the actual and constructive fraud claims, were unrelated to the breach of contract claim that Needham ultimately prevailed on and they were litigated until the summary judgment stage. Moreover, even though he prevailed some at trial, Needham ultimately lost on the major damages contention in the case, that is, that he procured sales to JIT Packaging, Inc. Thus, rather than have plaintiff's counsel resubmit their billing records, the court may adjust an award to account for partial success by reducing the overall award. *Spellan v. Board of Educ.,* 59 F.3d 642, 646 (7th Cir.1995) Indeed, the district court "may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37.

Having reviewed the various cases wherein courts have reduced fee awards to account for

---

> By definition, the parties involved were litigating the same issues. The time spent by defendants' attorneys in defending an action necessarily relates to the time spent by plaintiffs, though the relation is obviously imprecise, and may be governed by a variety of factors. Federal courts have repeatedly noted the value of information concerning the defendants' counsel's time expenditure, in assessing the reasonableness of time claimed by plaintiffs .... Though an assumption of precise congruity between the amounts of time spent by the two parties would obviously not be warranted, the value of the comparison cannot reasonably be assailed.

553 F.Supp. at 584 (citations omitted). In this case, the court has no information as to the fees Innerpac incurred defending this lawsuit but the court does take judicial notice of the fact that Innerpac was represented by two attorneys from the large international law firm of McDermott Will & Emery. *For Firm Overview, see http://www.mwe.com/index.cfm/fuseaction/about.home/index.cfm.* The court can reasonably infer, based upon the record in the case and the court's observations of the efforts of counsel, that the fees incurred by Innerpac in defense are roughly the equivalent, if not more, than those expended by Needham in this case especially given the fact that Innerpac's counsel had to travel to Fort Wayne to attend hearings and for both trials in this cause.

limited success, there is no simple formula here, but it is clear that limited or partial success is a highly significant factor in awarding attorney fees, even where different claims are related to one another. *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983); see also *Farrar,* 506 U.S. at 114 (court must consider the overall reasonableness of the fee in light of the degree of the plaintiff's overall success). Considering the court's familiarity with all the circumstances of this lawsuit, the court finds that the plaintiff's request should be discounted by an overall 35 percent. This measure accounts for limited success and provides for a roughly reasonable relationship between the results achieved and the fee awarded. This is especially true in this case as the court has factored into the discounted award the amount of effort needed for plaintiff to achieve, even this smaller recovery given how vigorously Innerpac chose to fight the case. Accordingly, the court shall reduce the lodestar amount by 35% to reflect these factors.[5]

| **ATTORNEY** | **LODESTAR AMOUNT** | **LODESTAR REDUCTION** | **TOTAL** |
|---|---|---|---|
| **Michael Harmeyer** | $145,826.00 | - $51,039.10 | $94,786.90 |
| **Christopher Myers (including paralegal services)** | $79,766.09 | - $27,918.13 | $51, 847.96 |
| **TOTALS** | | | $146,634.86 |

## II. Costs and Expenses

---

[5]More precisely, the court has calculated the amounts spent by plaintiff's counsel through the summary judgment phase where some of their claims were dismissed. Attorney Harmeyer, spent $41,622.00 or 28% of the total time requested through the summary judgment phase while Attorney Myers spent $16,827.50 or 21% of his total requested time through the summary judgment phase. The court has also reviewed the summary judgment briefing in this case from which it is clear that plaintiff's counsel devoted very little effort to the claims that were ultimately unsuccessful. Accordingly, of the 35% that the court discounts the lodestar, 5% is attributable to the unsuccessful claims. The remaining 30% reflects that lack of success on the damage claims that went to trial.

The Illinois Sales Representative Act also provides for the award of reasonable court costs. 820 ILCS 120/3. In addition to the award of fees above, Plaintiff also seeks costs in a total amount of $3,039.20, as set forth on their Bills of Costs, AO 133.[6] Defendant has not objected to the amounts sought in the Bill of Costs and the court has reviewed the itemization of the costs and finds all of them to be reasonable and well-taken. Accordingly, the court shall award plaintiff the entirety of the requests in the Bills of Cost, that is, $2,858.50 to Attorney Michael Harmeyer and $180.70 to Attorney Christopher Myers.

## Conclusion

In sum, the court hereby GRANTS the Plaintiff's Amended Motion for Attorneys Fees and Costs [DE 174] and awards total attorneys fees in the amount of $146,634.86 and $3,039.20 in reasonable costs payable in their respective amounts to the attorneys as set forth herein.

Entered: This 24th day of December, 2008.

s/ William C. Lee<br>
United States District Court

---

[6]Plaintiff's counsel submitted two separate Bills of Cost, one for each attorney. Plaintiff originally sought an amount greater than what was in the Bills of Cost but in his Amended Motion for Fees and Costs restricted his request to the amounts in the Bills of Cost.